**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

CHERIE L. SUMMERALL,

                Plaintiff,

vs.                                       Case No.  3:10-cv-7-J-JRK

MICHAEL J. ASTRUE,
Commissioner of Social Security,

                Defendant.

_____/

## OPINION AND ORDER[1]

### I.  Status

      Cherie L. Summerall ("Plaintiff") is appealing the Commissioner of the Social Security Administration's final decision denying her claim for disability insurance benefits and supplemental security income.  Her alleged inability to work is based on the physical and mental impairments of "rheumatoid arthritis, herniated disks, [and] depression."  Transcript of Administrative Proceedings (Doc. No. 15; "Tr.") at 82 (capitalization omitted).  Plaintiff submitted applications for disability insurance benefits and supplemental security income, both dated October 31, 2001, alleging disability beginning July 31, 1997.  See Tr. at 76, 250.  Plaintiff's alleged onset date of disability was later amended to October 31, 2001.[2]  See Tr. at 22-23.

_____

[1]      The parties consented to the exercise of jurisdiction by a United States Magistrate Judge, see Consent to the Exercise of Jurisdiction by a United States Magistrate Judge (Doc. No. 24) and the Order of Reference (Doc. No. 25) entered on August 25, 2010.

[2]      Plaintiff acknowledged that by amending her alleged onset date to October 31, 2001, she effectively waived her application for disability insurance benefits because Plaintiff was not insured beyond December 1998.  See Tr. at 22-23.

Three hearings regarding Plaintiff's claim of disability have been held by two Administrative Law Judges ("ALJ(s)").  The first hearing was held on October 24, 2003.  Tr. at 19-54.  Thereafter, the ALJ denied Plaintiff's claim on November 24, 2003.  Tr. at 283-89. Plaintiff's request for review of the ALJ's decision was denied on February 6, 2004 by the Appeals Council.  Tr. at 2-4.  Plaintiff appealed the ALJ's decision to this Court.  On February 4, 2005, the Court reversed and remanded the case.[3]  Pursuant to the First Order, the Appeals Council vacated the ALJ's decision and remanded the case to the ALJ for further proceedings.  Tr. at 300-01.  Thereafter, a second hearing was held on December 5, 2005 before the same ALJ who had previously denied Plaintiff's claim.  Tr. at 347-90.  Once again, on April 5, 2006, the ALJ denied Plaintiff's claim.  Tr. at 272-79.  Plaintiff's request for review of the ALJ's decision was denied on May 26, 2006 by the Appeals Council.  Tr. at 264-66. Plaintiff appealed the ALJ's decision to this Court.  On April 23, 2008, the Court again reversed and remanded the case.[4]  The Appeals Council vacated the ALJ's decision and remanded the case to the ALJ for further proceedings.  Tr. at 423.

A third hearing was held by a second ALJ on January 15, 2009.  Tr. at 533-83.  On September 2, 2009, a third ALJ issued a Decision based upon the testimony at the January

---

[3]      The Honorable Wm. Terrell Hodges, United States District Judge, entered an Order (Doc. No. 20 in Case No. 5:04-cv-112-Oc-10GRJ; "First Order") on February 4, 2005, Tr. at 292-93, adopting the Report and Recommendation (Doc. No. 19 in Case No. 5:04-cv-112-Oc-10GRJ), entered December 15, 2004, of the Honorable Gary R. Jones, United States Magistrate Judge, Tr. at 295-97.

[4]      On March 14, 2008, Judge Jones entered a Report and Recommendation (Doc. No. 22 in Case No. 5:06-cv-270-Oc-10GRJ) in which he recommended the ALJ's decision be affirmed.  On April 1, 2008, Plaintiff filed her Objections to the United States Magistrate Judge's Report and Recommendation (Doc. No. 23 in Case No. 5:06-cv-270-Oc-10GRJ; "Objections").  Thereafter, on April 23, 2008, Judge Hodges issued an Order (Doc. No. 25 in Case No. 5:06-cv-270-Oc-10GRJ; "Second Order") sustaining Plaintiff's Objections to the Report and Recommendation and reversing and remanding the case for further proceedings.  Tr. at 411-13.  Plaintiff's Objections and the Report and Recommendation are not contained in the Transcript of Administrative Proceedings, but the Court takes judicial notice of the them.  See Young v. City of Augusta, Ga. Through DeVaney, 59 F.3d 1160, 1166 n.11 (11th Cir. 1995).

-2-

15, 2009 hearing before the second ALJ and the evidence of record, and the ALJ found Plaintiff "not disabled" through the date of the Decision.  <u>See</u> Tr. at 394-403.  On January 4, 2010, Plaintiff commenced this action by timely filing a Complaint (Doc. No. 1) seeking review of the Commissioner's final Decision.  Plaintiff has exhausted the available administrative remedies, and the case is properly before the Court.

Plaintiff, who was forty-five years old at the time of the January 15, 2009 hearing, Tr. at 557, raises five issues for resolution by the Court: (1) whether Plaintiff "was deprived of due process by the ALJ's failure to consider the case de novo, following [C]ourt remand, despite his statements in pre-hearing notices that he would be considering the entire case, and issuing a new decision based on the evidence of record"; (2) whether the ALJ erred in relying on the definition of the term "repetitive" supplied by the vocational expert ("VE"); (3) whether the ALJ erred in "refusing to consider [Plaintiff]'s depression following remand and in failing to provide any reasons for rejecting the opinions" of Hugh Brown, Ph.D. ("Dr. Brown") and Alan Steed, Ph.D. ("Dr. Steed"), two psychologists; (4) whether the VE identified jobs in the national economy that Plaintiff can perform; and (5) whether the ALJ erred in "failing to permit [Plaintiff] to amend the onset date of her disability."  Plaintiff's Brief (Doc. No. 19; "Pl.'s Br.") at 1, 13, 15, 16, 21, 22 (capitalization omitted).  After a thorough review of the entire record and consideration of the parties' respective memoranda, the undersigned finds the ALJ's Decision is supported by substantial evidence of record.  There was no deprivation of due process; no error regarding the ALJ's reliance on the VE regarding the meaning of the term "repetitive"; no error on the part of the ALJ in not addressing Plaintiff's alleged depression; no error in the ALJ's conclusion that significant jobs exist in the national economy

that Plaintiff can perform; and no error in denying Plaintiff's request to amend her alleged

onset date of disability.  Accordingly, the Commissioner's final Decision is due to be affirmed.

## II.  The ALJ's Decision

When determining whether an individual is disabled, an ALJ must follow the five-step

sequential inquiry set forth in the Code of Federal Regulations ("Regulations"), determining

as appropriate whether the plaintiff: 1) is currently employed or engaging in substantial

gainful activity; 2) has a severe impairment; 3) has an impairment that meets or medically

equals one listed in the Regulations; 4) can perform past relevant work; and 5) retains the

ability to perform any work in the national economy.  See 20 C.F.R. §§ 404.1520, 416.920;

see also Phillips v. Barnhart, 357 F.3d 1232, 1237 (11th Cir. 2004).  The ALJ performed the

required five-step sequential inquiry set forth in 20 C.F.R. §§ 404.1520 and 416.920.  The

ALJ stated Plaintiff meets "the insured status requirements of the Social Security Act through

December 31, 1998." Tr. at 397.  The ALJ noted, however, that Plaintiff's "amended alleged

onset date is later than" December 31, 1998.  Tr. at 397.  At step one, the ALJ established

Plaintiff has not engaged in substantial gainful activity since October 31, 2001.  Tr. at 398.

At step two, the ALJ found that Plaintiff suffers from the following severe impairments:

"rheumatoid arthritis and lumbar degenerative disc disease with left L5-S1 herniated nucleus

pulposus . . . ." Tr. at 398.  The ALJ stated the following:

> [Plaintiff]'s medically determined mental impairment of depression does not
> cause more than minimal limitation in . . . [Plaintiff]'s ability to perform basic
> mental work activities and is therefore nonsevere.  Since the . . . [Court] did not
> reverse the former [ALJ]'s decision regarding . . . [Plaintiff]'s alleged depression,
> the issue of this impairment is not before the undersigned.

-4-

Tr. at 398.   At step three, the ALJ stated Plaintiff "does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 . . . ." Tr. at 398.  The ALJ determined Plaintiff has the following residual functional capacity ("RFC"):

> [T]o perform sedentary work . . . with the ability to lift up to [ten] pounds; sit for up to [six] hours in an [eight-]hour workday; and stand or walk for [three] to [four] hours in an [eight-]hour workday.  Additionally she must be able to change positions at will.  No repetitive use of the hands or forceful use of the hands such as squeezing with the hands.  She can occasionally balance, stoop, kneel, crouch, and climb ramps and stairs.  She can never climb ladders, ropes, or scaffolds, and she can never crawl.  She is to avoid concentrated exposure to extreme cold temperatures and to hazardous machinery and open heights.

Tr. at 398.  At step four, the ALJ found Plaintiff cannot perform her past relevant work.  See Tr. at 400.  At step five, the ALJ found Plaintiff can perform the following jobs, which exist in significant numbers in the national economy: "[t]elephone solicitor"; "[a]ccount interviewer"; "[a]ppointment clerk"; "[a]nimal shelter clerk"; "[d]ispatcher"; and "[o]rder clerk." Tr. at 402. The ALJ concluded Plaintiff was not under a disability[5] from July 31, 1997 through the date of the Decision.  Tr. at 402.

## III.  Background

Three final decisions have been issued by the Social Security Administration ("SSA") denying Plaintiff's claim of disability.  Prior to the present case, the Court twice reversed and remanded the Commissioner's decisions.  Following the first remand of the case, the ALJ again denied Plaintiff's disability claim.  Tr. at 272-79.  On appeal to this Court, the Magistrate

---

[5]       "Disability" is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]"  42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A).

Judge recommended affirming the ALJ's decision.  <u>See</u> Report and Recommendation at 20.

Thereafter, on April 1, 2008, Plaintiff filed her Objections to the Report and Recommendation.  In the Objections, Plaintiff raised one issue for the Court's consideration: whether the ALJ "failed to sustain his burden of establishing that there is other work in the national economy that [Plaintiff] can perform because the testimony of the [VE] . . . conflicted with the Dictionary of Occupational Titles ('DOT')."  Objections at 1.  Plaintiff requested that the Court remand the case "to resolve the conflict between the VE's testimony and the DOT regarding the amount of handling entailed in each of the jobs cited by the VE."  <u>Id.</u> at 4.

On April 23, 2008, after reviewing Plaintiff's Objections and sustaining them, the Court remanded the case for the second time.  Second Order at 3.  The Court noted "Plaintiff contends that a conflict exists between the testimony of the [VE] with respect to . . . Plaintiff's ability to engage in repetitive use or forceful squeezing of the hands, and the job requirements of the various positions cited by the [VE], as defined in the [DOT]."  <u>Id.</u> at 1-2.  The Court concluded that "[t]his ambiguity in the [VE]'s testimony, as well [as] the potential conflict with the [DOT] must be resolved by the ALJ on remand."  <u>Id.</u> at 2.  The Court reversed and remanded the case "for further proceeding consistent with this Order."  <u>Id.</u> at 3.

Following remand, on October 6, 2008, the Appeals Council vacated the ALJ's final decision and remanded the case to the ALJ "for further proceedings consistent with the order of the [C]ourt."  Tr. at 423.  The Appeals Council stated the ALJ "will offer . . . [Plaintiff] the opportunity for a hearing, take any further action needed to complete the administrative record and issue a new decision."  Tr. at 423.

After the January 15, 2009 hearing, the case was transferred to a third ALJ.  Tr. at 394.  The third ALJ issued a Decision finding Plaintiff not disabled from July 31, 1997 through the date of the Decision.  Thereafter, Plaintiff appealed the third ALJ's Decision to this Court.

## IV.  Standard of Review

This Court reviews the Commissioner's final decision as to disability pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).  Although no deference is given to the ALJ's conclusions of law, findings of fact "are conclusive if . . . supported by 'substantial evidence'[.]"  Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001) (citing Falge v. Apfel, 150 F.3d 1320, 1322 (11th Cir. 1998)).  "Substantial evidence is something 'more than a mere scintilla, but less than a preponderance.'"  Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987)).  The substantial evidence standard is met when there is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  Falge, 150 F.3d at 1322 (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)).  It is not for this Court to reweigh the evidence; rather, the entire record is reviewed to determine whether "the decision reached is reasonable and supported by substantial evidence."  Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991) (internal quotation and citations omitted); see also McRoberts v. Bowen, 841 F.2d 1077, 1080 (11th Cir. 1988); Walker v. Bowen, 826 F.2d 996, 999 (11th Cir. 1987).  The decision reached by the Commissioner must be affirmed if it is supported by substantial evidence–even if the evidence preponderates against the Commissioner's findings.  Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158-59 (11th Cir. 2004) (per curiam).

## V.  Discussion

-7-

The Court must resolve the following:  (1) whether Plaintiff "was deprived of due process by the ALJ's failure to consider the case de novo, following [C]ourt remand, despite his statements in pre-hearing notices that he would be considering the entire case, and issuing a new decision based on the evidence of record"; (2) whether the ALJ erred in relying on the definition of the term "repetitive" supplied by the VE; (3) whether the ALJ erred in "refusing to consider [Plaintiff]'s depression following remand and in failing to provide any reasons for rejecting the opinions" of Dr. Brown and Dr. Steed, two psychologists; (4) whether the VE identified jobs in the national economy that Plaintiff can perform; and (5) whether the ALJ erred in "failing to permit [Plaintiff] to amend the onset date of her disability."  Pl.'s Br. at 1, 13, 15, 16, 21, 22 (capitalization omitted).  Each argument is addressed in turn.

## A.    De Novo Review on Remand

Plaintiff argues the ALJ was required to consider the entire case de novo on remand, and "the ALJ deprived [her] of due process of law in failing to properly provide her with advanced notice of the limited issues he would be addressing at the hearing."  Pl.'s Br. at 13-14.

At the beginning of the January 15, 2009 hearing, the second ALJ clarified the issue he was considering:

> ALJ:        . . . Okay.  So it's been set here as if it were just an ordinary de novo remand.  What should have been done, and I get myself out of the trap by saying they didn't bring it to me for review first, I think what should have been done is that we should have scheduled Richard Hickey . . . if he's still alive to be the [VE] on this case because the entire thing revolves around the question of the additional jobs that Mr. Hickey testified to.

Tr. at 538.  The ALJ offered to "entertain a [m]otion to continue" the hearing so Mr. Hickey

could be called to testify.  Tr. at 539.  Counsel for Plaintiff stated he wanted to proceed with

the hearing and have the VE present at the hearing testify about the meaning of "repetitive"

as it relates to the DOT.  See Tr. at 540.  Counsel for Plaintiff later questioned the ALJ about

the issues:

> ATTY:     You said it's not a de novo hearing.  That we would be restricted
> to this issue . . . .
>
> ALJ:     Correct.
>
> . . .
>
> ALJ:     . . . I'm not here to review [the previous ALJ's] findings.  As a
> matter of fact quite honestly I would have used a different RFC
> personally.  Okay.  But I feel I'm duly bound to use exactly the
> RFC.  And if we had taken VE testimony today that's what I was
> going to do.  I was going to use – I was going to open up his
> Order and use exactly the same words that he had used.  Okay.
> And it's very clear to me the District Judge sent this back on this
> one issue and did not mention anything else as, you know, being
> incorrect or overruled or anything like that.

Tr. at 552-53.  Thereafter, Plaintiff decided to proceed with the hearing, but Plaintiff's counsel

objected to the ALJ's decision not to conduct the hearing de novo.  See Tr. at 554.

The undersigned must first determine the scope of remand from the District Judge

before resolving the issue of whether Plaintiff was deprived of due process.

### 1.    Scope of Remand

Plaintiff asserts the ALJ erred in limiting the issues following remand from the District

Judge.  Id. at 14.  Plaintiff submits the following:

> Following remand by this Court, the Appeals Council entered an Order
> remanding the case to the ALJ "for further proceedings consistent with the order
> of the [C]ourt," and directing that the ALJ "will offer . . . [Plaintiff] the opportunity

for a hearing, take any further action needed to complete the administrative record and issue a new decision."

Id. at 13.  Thus, Plaintiff concludes, "the ALJ was, in fact, required to consider all issues *de novo* and to render a new decision based on the evidence before him."  Id. at 14.

When a magistrate judge enters a report and recommendation after reviewing a decision of the Commissioner, a party may submit specific, written objections to the district judge in accordance with 28 U.S.C. § 636 and Rule 6.02, Local Rules, United States District Court, Middle District of Florida, within fourteen (14)[6] days after service of the report and recommendation.   Failure to file timely objections shall bar the party from a de novo determination by a district judge and from attacking the factual allegations on appeal.  See 28 U.S.C § 636(b)(1).   General objections to a report and recommendation, such as incorporating by reference other arguments made in prior briefs, do not receive a de novo review.  See Tauber v. Barnhart, 438 F. Supp. 2d 1366, 1373 (N.D. Ga. 2006).  "[T]he district court will review those portions of the [report and recommendation] that are not [specifically] objected to under a clearly erroneous standard."   Liberty Am. Ins. Group v. WestPoint Underwriters, LLC, 199 F. Supp. 2d 1271, 1276 (M.D. Fla. 2001).

If a case is remanded by the Court, the Appeals Council may make a decision or remand the case to the ALJ with instructions to take further action and issue a decision.  20 C.F.R. § 404.983. "Any issues relating to [a claimant's] claim may be considered by the [ALJ] whether or not they were raised in the administrative proceedings leading to the final decision in [the claimant's] case." 20 C.F.R. § 404.983 (emphasis added). The ALJ "shall take any

---

[6]      At the time the Magistrate Judge entered the Report and Recommendation on March 14, 2008, the time period within which objections had to have been filed was ten days, not fourteen days.

action that is ordered by the Appeals Council and <u>may</u> take any additional action that is not inconsistent with the Appeals Council's remand order." 20 C.F.R. § 404.977 (emphasis added). The SSA Office of Disability Adjudication and Review's Hearings, Appeals and Litigation Law Manual ("HALLEX") provides, in relevant part, the following in regard to cases on remand:

> If a court remands a case . . . , and the Appeals Council subsequently remands the case to an ALJ for further proceedings and a new decision, the Appeals Council will generally vacate the final decision of the Commissioner that the court remanded. When the Appeals Council vacates a final decision of the Commissioner, the ALJ must consider all <u>pertinent</u> issues <u>de</u> <u>novo</u>.

HALLEX I-2-8-18, 1993 WL 643058, at 1 (emphasis added). "Inclusion of the word 'pertinent' in the manual is an indication that a case may be remanded for adjudication of only the particular steps in the inquiry which are disputed . . . ." <u>Gomez v. Comm'r of Soc. Sec.</u>, No. 08-449 (DRD), 2009 WL 2222797, at *7 (D.N.J. July 22, 2009) (unpublished); <u>see</u> <u>Calderon v. Astrue</u>, 683 F. Supp. 2d 273, 277 (E.D.N.Y. 2010) (stating that "the Appeals Council can and does limit the 'pertinent' issues to those identified by the district court" by "remand[ing] [a] case to an [ALJ] for further proceedings consistent with the order of the court").

Here, following the first remand of the case, the ALJ again denied Plaintiff's claim for disability. Tr. at 272-79. On appeal, Plaintiff raised three issues for the Court's consideration: (1) whether the ALJ complied with the remand order of the Appeals Council; (2) whether the ALJ's credibility determination of Plaintiff was supported by substantial evidence; and (3) whether the ALJ established that there was "other work in the national economy that Plaintiff can perform." Report and Recommendation at 9. The Magistrate Judge recommended affirming the ALJ's decision. <u>See</u> <u>id.</u> at 20. Thereafter, Plaintiff filed

her Objections to the Report and Recommendation.  Plaintiff, however, only raised one issue for the District Judge's consideration: whether the ALJ "failed to sustain his burden of establishing that there is other work in the national economy that [Plaintiff] can perform because the testimony of the [VE] . . . conflicted with the [DOT] . . . ."  Objections at 1.  Plaintiff only requested that the District Judge remand the case "to resolve the conflict between the VE's testimony and the DOT regarding the amount of handling entailed in each of the jobs cited by the VE."  Id. at 4.  This was one of the three issues Plaintiff had raised in her memorandum submitted to the Magistrate Judge for his consideration.  Although Plaintiff concluded her Objections by stating that "based on the foregoing, and for the reasons stated in Plaintiff's Brief, this Court should reject the Magistrate Judge's factual findings[,]" id. at 4 (emphasis added), Plaintiff's reference to the other two issues in her memorandum reviewed by the Magistrate Judge was a general objection.  Such general objections do not require a de novo review by the Court.  See Tauber, 438 F. Supp. 2d 1366.

It is evident the District Judge only considered the specific objection raised in Plaintiff's Objections to the Report and Recommendation on a de novo basis.  In the Second Order, the District Judge stated that "the Magistrate Judge found, in part, that the Commissioner met his burden of establishing that Plaintiff . . . could perform other work that was available in the national economy."  Second Order at 1 (emphasis added).  The District Judge explained that "Plaintiff contends that a conflict exists between the testimony of the [VE] with respect to . . . . Plaintiff's ability to engage in repetitive use of forceful squeezing of the hands, and the job requirements of the various positions cited by the [VE], as defined in the [DOT]."  Id. at 2.  The District Judge then found the following with regard Plaintiff's specific objection:

> An independent review of the case file shows that during the proceedings before the ALJ, the [VE] listed four types of jobs that . . . Plaintiff could potentially perform: dispatcher, appointment clerk, animal shelter clerk, and order clerk. Each of these jobs are identified in the [DOT] as requiring frequent, repetitive use of the hands for up to 5 hours and 28 minutes per day. The [VE] also provided testimony with respect to how many hours . . . Plaintiff could engage in frequent, repetitive use of her hands; however, the testimony provided on this point is ambiguous. It is unclear from the [VE]'s testimony whether the Expert meant that . . . Plaintiff could engage in frequent repetitive use of her hands for up to six to eight hours per day, that she could engage in such repetitive use for only up to two hours per day, or that she could engage in such repetitive use for no more than six hours per day. Depending on what the [VE] truly meant, the testimony may or may not conflict with the relevant job descriptions set forth in the [DOT].

Id. at 2. The District Judge concluded that "[t]his ambiguity in the [VE]'s testimony, as well [as] the potential conflict with the [DOT] must be resolved by the ALJ on remand," id., and he reversed and remanded the case "for further proceedings consistent with this Order," id. at 3. As to Plaintiff's general objections regarding the other two issues considered by the Magistrate Judge, the District Judge made no mention of any "clearly erroneous" findings on the part of the Magistrate Judge. See Liberty Am. Ins. Group, Inc, 199 F. Supp. 2d at 1276. Thus, the District Judge implicitly found that there were no "clearly erroneous" findings and remanded the case only for the Commissioner to consider the one specific issue raised by Plaintiff in her Objections to the Report and Recommendation.

Following remand from the District Judge, the Appeals Council vacated the ALJ's final decision and remanded the case to the ALJ "for further proceedings consistent with the order of the [C]ourt." Tr. at 423. The Appeals Council stated the ALJ "will offer . . . [Plaintiff] the opportunity for a hearing, take any further action needed to complete the administrative record and issue a new decision." Tr. at 423. The Appeals Council did not articulate any additional issues for the ALJ's consideration. See Tr. at 423. As such, "further proceedings

consistent with the order of the [C]ourt," Tr. at 423, entailed resolving the one issue identified by the District Judge in the Second Order, see Second Order at 2-3.

### 2.    Due Process

Plaintiff argues the ALJ deprived her of due process of law.  See Pl.'s Br. at 13-14. Plaintiff claims the following with regard to the prehearing notices from the SSA:

> Despite advising [Plaintiff] in all pre-hearing notices that all issues would be decided, including those decided in her favor in the prior administrative decision, and notifying her that he would be considering all issues pertaining to her entitlement to benefits, [the ALJ] waited until the hearing itself to advise [Plaintiff] that he was severely limiting the issues to the one issue identified by the federal court – to resolve the ambiguity in the VE's testimony regarding the work [Plaintiff] could perform.

Id. at 13.

"Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process clause of the Fifth or Fourteenth Amendment."  Mathews v. Eldridge, 424 U.S. 319, 332 (1976).  "[I]n appropriate circumstances, a person's interest in federal entitlement may constitute a protected property interest," which includes entitlement to social security disability benefits.  Abioro ex rel. J.M.A. v. Astrue, 296 F. App'x 866, 869 (11th Cir. Oct. 20, 2008) (unpublished) (citing Mathews, 424 U.S. at 332). "The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." Mathews, 424 U.S. at 333 (internal quotations and citations omitted).  This includes the requirement "that a person in jeopardy of serious loss be given notice of the case against him . . . ." Id. at 348 (internal quotations and alteration omitted).

A claimant must make a showing of prejudice to support an allegation of a violation of his or her due process rights before a court will remand the case to the Commissioner for reconsideration. Kelley v. Heckler, 761 F.2d 1538, 1540 (11th Cir. 1985) (citations omitted). "This at least requires a showing that the ALJ did not have all of the relevant evidence before him in the record . . . , or that the ALJ did not consider all of the evidence in the record in reaching his decision." Id. (citation omitted).

Here, regarding Plaintiff's protected "property" interest, Plaintiff's potential entitlement to social security disability benefits falls within the meaning of the Due Process clause of the Fifth Amendment. See Abioro, 296 F. App'x at 869. Plaintiff's protected interest at the January 15, 2009 hearing, however, did not exceed the scope of the remand Order from the District Judge. In other words, Plaintiff was only entitled to a hearing before the ALJ that was consistent with the Order of the District Judge. As discussed above, the District Judge remanded the case solely for the resolution of the "ambiguity in the [VE]'s testimony, as well [as] the potential conflict with the [DOT]." Second Order at 2. Accordingly, Plaintiff was only entitled to a hearing on the one issue raised in her Objections to the Report and Recommendation, and not the other two issues she raised in her memorandum submitted to the Magistrate Judge for his consideration.

Next, the undersigned discusses whether Plaintiff received adequate notice regarding the issue to be addressed at the January 15, 2009 hearing. See Mathews, 424 U.S. at 348. Plaintiff was notified by the District Judge of the specific issue to be resolved at the hearing. See Second Order at 1-3. In the November 4, 2008 letter from the SSA to Plaintiff's attorney, Plaintiff was informed that the ALJ "will consider the issue(s) [Plaintiff] has raised and the

-15-

evidence now in her file and any additional evidence [she] provide[s]." Tr. at 424 (emphasis added).  The letter also stated that "[t]he ALJ <u>may</u> consider other issues as well and, if necessary, change parts of the previous decision that were favorable to . . . [Plaintiff]." Tr. at 424 (emphasis added).  The letter only guaranteed that the ALJ would consider the specific issue raised by Plaintiff in her Objections to the Report and Recommendation, which by clear implication was the one issue on which the District Judge remanded the case.  Otherwise, the letter made it clear that the ALJ was not prohibited from considering other issues, but it did not guarantee such consideration.

In the letter from the second ALJ to Plaintiff's attorney, also dated November 4, 2008, Plaintiff was informed the supplemental hearing was being scheduled pursuant to the Appeals Council's order remanding the case without mention of any additional issues the ALJ would be addressing.  <u>See</u> Tr. at 430.  The Appeals Council's order specifically stated the case was being remanded to the ALJ for "further proceedings consistent" with the Order of the District Judge.  Tr. at 423.  As noted, the only issue remanded by the District Judge was the specific issue raised by Plaintiff in her Objections to the Magistrate Judge's Report and Recommendation.

In an undated letter from the SSA to Plaintiff's attorney, the SSA requested that Plaintiff complete an enclosed questionnaire to "expedite the processing" of the supplemental hearing.  Tr. at 432.  There is no mention of the issues the ALJ would be considering at the hearing.  <u>See</u> Tr. at 432.

On November 19, 2008, the second ALJ sent a prehearing order providing Plaintiff with information regarding the upcoming hearing.  <u>See</u> Tr. at 442-46.  The prehearing order

discussed the right to representation, requests for on-the-record decisions, hearing preparation, and motions and interlocutory orders.  See Tr. at 442-46.  The ALJ did not mention the issues to be decided at the hearing.  See Tr. at 442-46.

The Notice of Hearing dated December 11, 2008, notified Plaintiff that her hearing was scheduled for January 15, 2009 at 10:00 a.m.  Tr. at 447.  The Notice of Hearing, which appears to be a form letter, sets forth the following with regard to the issues:

**Issues I will Consider in Your Case**

The hearing concerns your application of July 29, 2004, for a period of disability and Disability Insurance Benefits . . . .  The hearing also concerns your application of June 25, 2005, for Supplemental Security Income (SSI) and whether you may be eligible for SSI as a disabled person . . . .

I will decide if you have enough earnings . . . to be insured for Disability Insurance Benefits.  If you do, I must decide if you became disabled while insured.

Under the Act, I may find you disabled for those benefits or SSI only if you have a physical or mental impairment that:

・ has prevented you from doing any substantial gainful work; and

・ has lasted [twelve] straight months or can be expected to last for that time or result in death.

To decide if you are disabled, I will follow a step-by-step process until I can make a decision.  The issues in this process concern:

・ any work you have done since you got sick;

・ the severity of your impairment(s); and

・ your ability to do the kind of work you did in the past and, considering your age, education and work experience, any other work that exists in the national economy.

. . .

-17-

**More About the Issues**

I plan to look with special care into the issue of **[ENTER PERSONALIZED LANGUAGE FURTHER DESCRIBING THE ISSUES]**.

Tr. at 448-49 (emphasis added).  The Court notes initially that the application dates in the Notice of Hearing are incorrect.  Compare Tr. at 448-49 with Tr. at 76, 250.  As Plaintiff is aware, see Pl.'s Br. at 2, her applications for supplemental security income and disability insurance benefits are both dated October 31, 2001, not July 29, 2004 and June 25, 2005 as stated in the Notice of Hearing, see Tr. at 448.  Regarding the section entitled "More About the Issues," it is obvious the section was not completed because the form language "**[ENTER PERSONALIZED LANGUAGE FURTHER DESCRIBING THE ISSUES]**" was left unaltered.  Tr. at 449.  Notwithstanding the deficiencies in the letter, the Court declines to construe the general, boilerplate language of the form letter as an expansion of the scope of the remand Order issued by the District Judge.  Accordingly, Plaintiff received adequate notice of issue to be addressed at the January 15, 2009 hearing.

As to Plaintiff's right to an "opportunity to be heard at a meaningful time and in a meaningful manner," Mathews, 424 U.S. at 333, the undersigned finds Plaintiff had an opportunity to be heard on all issues.  Plaintiff was notified that her hearing would take place on January 15, 2009 at 10:00 a.m.  See Tr. at 447.  Plaintiff and her attorney were present for the hearing.  Plaintiff was given the opportunity to move for a continuance of the hearing to schedule the appearance of Mr. Hickey, the VE at the previous hearing, but the offer was declined.  See Tr. at 540.  Instead, Plaintiff proceeded with the hearing and testified on her behalf.  See Tr. at 556-58.  The ALJ also called a VE to testify regarding the specific issue for which the case was remanded by the District Judge.  See Tr. at 563-79.  Accordingly,

Plaintiff's hearing on January 15, 2009 was held at "a meaningful time and in a meaningful manner." <u>Mathews</u>, 424 U.S. at 333.

Moreover, Plaintiff previously had an opportunity to be heard on the other two issues appealed to the Magistrate Judge, which Plaintiff contends should have been heard at the January 15, 2009 hearing. On December 5, 2005, a hearing was held on Plaintiff's behalf, which Plaintiff and her attorney attended. Plaintiff and Mr. Hickey testified at the hearing. <u>See</u> Tr. at 349-88. The ALJ considered the testimony and the evidence of record regarding all of Plaintiff's impairments in making a disability determination, and he issued a thorough decision, although reversed on one issue. <u>See</u> Tr. at 272-79. The District Judge remanded the case on the one specific issue raised by Plaintiff in her Objections to the Report and Recommendation. Thus, all of Plaintiff's other alleged impairments were considered at Plaintiff's hearing on December 5, 2005, which was held at "a meaningful time and in a meaningful manner." <u>Mathews</u>, 424 U.S. at 333.

With regard to prejudice, Plaintiff was not unduly prejudiced by the lack of a prehearing notice clearly announcing that the issue at the hearing would be the resolution of the "ambiguity in the [VE]'s testimony [regarding the meaning of 'repetitive'], as well [as] the potential conflict with the [DOT]." Second Order at 2. The undersigned notes that in Plaintiff's memorandum, she does not state how she was prejudiced. Plaintiff does not cite any new evidence she would have presented at the January 15, 2009 hearing that was not presented at the December 5, 2005 hearing. <u>See</u> <u>Kelley</u>, 761 F.2d at 1540. Also, the District Judge did not indicate the ALJ who issued the decision following the December 5, 2005 hearing failed to consider all of the evidence of record in reaching his decision. <u>See</u> <u>id.;</u>

Second Order at 1-3.  Moreover, a claim of prejudice suffered by Plaintiff is undermined by the fact that Plaintiff only raised one specific issue in her Objections to the Report and Recommendation.  Additionally, the District Judge only remanded the case on one specific issue.  Further, the Appeals Council remanded the case to the ALJ for further proceedings consistent with the District Judge's Order.  Upon review of the record, the undersigned is satisfied that all of the evidence of record was considered by the ALJ in accordance with the Order remanding the case in reaching the Decision.  See Kelley, 761 F.2d at 1540.  Thus, Plaintiff was on notice that the January 15, 2009 hearing would only address the specific issued remanded by the District Judge.

Accordingly, Plaintiff's due process rights were not violated by the Commissioner. Plaintiff had an opportunity to be heard on all issues, and she did not suffer any undue prejudice.  The ALJ complied with the Second Order by resolving the "ambiguity in the [VE]'s testimony, as well [as] the potential conflict with the [DOT] . . . [,]" Second Order at 2, rather than considering all issues on a de novo basis.

## B.    Definition of "Repetitive"

To determine what was specifically required of the ALJ on remand, a review of Plaintiff's Objections to the Report and Recommendation and the Second Order is necessary. As previously discussed, the case was remanded by the District Judge to resolve the conflict identified by Plaintiff in her Objections to the Report and Recommendation.  See Second Order at 2-3.  In the Objections, Plaintiff stated that the ALJ at the December 5, 2005 hearing "equated 'repetitive use' of the hands with 'frequent' or 'like between six and eight hours that you would do this.'"  Objections at 1-2 (quoting Tr. at 387).  Plaintiff asserted in her

Objections that "the ALJ asked the VE to assume that an individual could <u>not</u> use their hands on a repetitive basis, or for between six and eight hours a day." <u>Id.</u> at 2.  Plaintiff contended that the four jobs identified by the VE require "frequent use of the hands." <u>Id.</u> Thus, in the Objections, Plaintiff identified a conflict between the ALJ's comments to the VE that the ALJ believed "repetitive" equaled "frequent," and the VE's testimony that Plaintiff could perform jobs requiring the frequent use of Plaintiff's hands. <u>See id.</u> at 1-2.  Because this conflict was not resolved at the December 5, 2005 hearing, Plaintiff requested that the District Judge remand the case to resolve the conflict. <u>See id.</u> at 3, 4.

The District Judge acknowledged the conflict and stated it was unclear what the VE meant by "frequent, repetitive use of her hands" and whether the jobs identified by the VE conflicted with the DOT.  Second Order at 2.  Specifically, the District Judge stated the following:  "the [VE] listed four types of jobs that . . . Plaintiff could potentially perform: dispatcher, appointment clerk, animal shelter clerk, and order clerk.  Each of these jobs are identified in the [DOT] as requiring frequent, repetitive use of the hands for up to 5 hours and 28 minutes per day." <u>Id.</u>  The District Judge concluded that "[d]epending on what the [VE] truly meant, the testimony may or may not conflict with the relevant job descriptions set forth in the [DOT]." <u>Id.</u>  Thus, the District Judge granted Plaintiff's request and remanded the case to clarify what the "[VE] truly meant." <u>Id.</u> at 2-3.

Plaintiff now argues "repetitive" was not properly defined at the January 15, 2009 hearing. <u>See</u> Pl.'s Br. at 16-19.  Plaintiff contends that "since doctors are not presumed to be aware of the Commissioner's definitions, what Dr. Tindall meant when he limited [Plaintiff] to 'no repetitive use or forceful squeezing with the hands' should be based [on] the common

meaning of these terms; not the vocational definition set forth by the [VE]."[7]  Pl.'s Br. at 16

(capitalization omitted).  Plaintiff asserts that "[i]t is not the role of the [VE] to interpret what

a doctor meant in opining that a claimant can not repetitively use his or her hands." Id. at 17.

Plaintiff further asserts that "Dr. Tindall is not presumed to be aware of the precise definitions

of vocational definitions that are used [by] the [SSA] . . . in the adjudication of its claims."[8]

Id. at 17 (citing to Social Security Ruling ("SSR") 96-5p, 1996 WL 374183 (S.S.A. July 2,

1996) (stating "[a]djudicators must not assume that a medical source using terms such as

'sedentary' and 'light' is aware of our definitions of these terms")).

In the Decision, the ALJ stated the following with regard to Plaintiff's ability to use her

hands:

> Responding to questions from . . . [Plaintiff]'s representative, the [VE]
> defined frequent as up to two-thirds of the day in an [eight]-hour day or [sixty-
> six] percent of the day. [The VE] also equated [repetitive[9]] with constant.  The
> [VE] then provided the handling and fingering requirements for jobs cited by the
> [VE] at the [December 5, 2005] hearing as well as the jobs set forth [in the
> Decision] as follows:
>
> · Telephone solicitor – occasional handling, occasional fingering;
> · Account interviewer – frequent handling, occasional fingering;
> · Appointment clerk – frequent handling, occasional fingering;
> · Animal shelter clerk – frequent handling, occasional fingering;
> · Dispatcher – frequent handling, occasional fingering; and
> · Order clerk – frequent handling, frequent fingering.
>
> Although the telephone solicitor job is described as occasional handling
> and frequent fingering in the DOT, the [VE] pointed out that the DOT is out of

---

[7]        Apparently, Dr. Tindall refused to clarify the meaning of "repetitive" as used in his opinion. See
Tr. at 541.

[8]        It is noted that neither party has provided, nor has the undersigned found, a precise definition
of the term "repetitive" in the Social Security Act.

[9]        It appears the ALJ inadvertently substituted the word "frequent" for "repetitive" in this portion
of the Decision because at the hearing, the VE testified "repetitive" equaled "constant."  See Tr. at 571.

date for that job, and based on her experience, that job is better described as
indicated above.  The [VE] further testified that her professional opinion is
consistent with the DOT with respect to the remaining jobs listed above (SSR
00-4p).

Tr. at 401-02.

Substantial evidence supports the ALJ's conclusions with regard to the VE's definition
of "repetitive" and how it impacts the jobs identified that Plaintiff can perform.  Plaintiff's
assertion that the definition in a common dictionary should have been used to determine what
Dr. Tindall meant by the term "repetitive," see Pl.'s Br. at 18, conflicts with what she
requested be resolved on remand in her Objections to the Report and Recommendation–a
clarification of the meaning of "repetitive" as used by the VE and how it relates to the DOT.
See Objections at 3, 4; Second Order at 1-2.  A review of the record reveals Plaintiff's
attorney was confident that the VE at the January 15, 2009 hearing could testify as to the
meaning of "repetitive" as used by the VE at the December 5, 2005 hearing.[10]  See Tr. at 541.
Although the term "repetitive" is not precisely defined in the DOT, the VE at the January 15,
2009 provided two definitions of "repetitive" as it relates to the DOT.  The first definition
applies to an individual's psychological capacity to perform "short cycle work."  Tr. at 545.
The VE testified as follows:

[VE]  . . . [R]epetitive is . . . a temperament and it relates to the worker
personality traits.  And temperament is the adaptability requirement made on the
worker by specific types of job situations.  So repetitive is a temperature [sic],
not . . . a frequency, not a duration of time.

---

[10]    As previously noted, at the January 15, 2009 hearing, the second ALJ stated the VE from the
December 5, 2005 hearing, Richard Hickey, should have been scheduled to testify because "the entire thing
revolves around the question of the additional jobs that Mr. Hickey testified to."  Tr. at 538.  The ALJ offered
to "entertain a [m]otion to continue" the hearing so Mr. Hickey could be called to testify.  Tr. at 539.  Plaintiff's
attorney at the hearing stated he "was just assuming any [VE] could look at the same assumptions . . . and
make that determination. Yes, [Mr. Hickey] might be preferable, but I don't really want to continue [the hearing]
to get [Mr. Hickey] back again."  Tr. at 540.

. . .

[ALJ]   And under the category of temperament you are suggesting that jobs are rated as to matching a prospective worker with the occupation in terms of their personality, proclivities and that sort of thing. Is that correct[?]

[VE]   Yes, sir.

. . .

[ALJ]   Okay.  And where it has the word repetitive it is referring to compatibility with a person who is able to sit and do things repetitively as opposed to one who would be more compatible with rapidly changing job tasks.  Would that be correct so far?

[VE]   That is correct.

Tr. at 566-67.  The ALJ proposed an example of a job to the VE to illustrate what "repetitive" means from a temperament perspective.  Specifically, the ALJ asked the VE whether the job of electronic assembler, which entails assembling a series of numerous parts and then repeating the series, is "repetitive."  Tr. at 546-47.  The VE responded, "That's repetitive." Tr. at 547.   When asked whether the jobs identified by Mr. Hickey at the previous hearing–appointment clerk, dispatcher, animal shelter clerk, and order clerk–are repetitive in nature from a temperament perspective, the VE responded that "they are not repetitive in nature."  Tr. at 567.  The VE identified two additional jobs Plaintiff can perform that are not repetitive in nature: telephone solicitor and charge account clerk.  See Tr. at 568, 569-70.

The second definition of "repetitive" relates to an individual's physical ability with regard to "handling" and "fingering."  Although not defined in the DOT, the VE translated "repetitive" into terms used in the DOT:

[VE]           Now in my opinion it would be constant and if you wanted to use a time frame of time it's constant.  It's not frequent.  It's constant.

. . .

[ATTY]        You're saying that when the term repetitive use of hands is concerned it's constant use of the hands either in writing, assembling, computer punching –

[VE]          Yes, sir.

Tr. at 571-72.  Thus, the VE determined that "repetitive" means "constant" in the DOT and implicitly indicated that "constant" requires use of the hands from two-thirds to 100 percent of an eight-hour workday.  See Tr. at 571, 573.  The VE's definition is consistent with the testimony of other vocational experts.  See Gallegos v. Barnhart, 99 F. App'x 222, 224-25 (10th Cir. 2004) (unpublished) (stating the plaintiff "presumes the terms 'frequent' and 'repetitive' are synonymous, but they are not.  In identifying jobs the plaintiff could perform, the VE expressly construed the term 'repetitive' to mean 'from two-thirds to 100 percent of the time"); Smith v. Chater, 962 F. Supp. 980, 984 n.3 (N.D. Tex. 1997) (stating that "[t]he VE testified that [the plaintiff]'s restriction on the repetitive use of his hands would not interfere with a cashier job because the constant use of the hands was not required").

Following the VE's translation of "repetitive" into a term used in the DOT for physical demands, the ALJ seemingly recognized that the issue centered on whether the jobs identified by the VE had fingering requirements that exceed Plaintiff's capabilities in light of her rheumatoid arthritis:

ALJ:   . . . I think we've just struck on something here and I would like to pursue.  We have six occupations which have been identified.  I think we ought to make it very clear what we're doing.  We ought to have the fingering requirements addressed . . . .

. . .

> ALJ:   . . . [B]ecause all of a sudden this is occurring to me that this might be the crux of all the issue.  If . . . [Dr. Tindall] had been more clear about what he meant.

Tr. at 575.   The VE testified that neither the jobs identified by Mr. Hickey nor the two additional jobs identified by the VE require constant handling or fingering.  See Tr. at 572-580.   Specifically, the VE testified the following jobs have the corresponding handling and fingering demands:

> Appointment clerk: handling, frequent; fingering, occasional
>
> Order clerk: handling, frequent; fingering, frequent
>
> Animal shelter clerk: handling, frequent; fingering, occasional
>
> Dispatcher: handling, frequent; fingering, occasional
>
> Telephone solicitor: handling, occasional; fingering, occasional[11]
>
> Charge account clerk: handling, frequent; fingering, occasional

Tr. at 575-78.  Although Plaintiff is correct that SSR 96-9p provides that "[m]ost unskilled sedentary jobs require good use of the hands and fingers for repetitive hand-finger actions," Pl.'s Br. at 19 (emphasis omitted), the VE identified two unskilled, sedentary jobs, order clerk and charge account clerk, which do not require "constant," or "repetitive," use of the hands, see Tr. at 576.

Accordingly, the ALJ resolved the issue of defining "repetitive."  The VE testified that "repetitive" equals "constant."  The VE further testified the jobs of appointment clerk, dispatcher, animal shelter clerk, order clerk, charge account clerk, and telephone solicitor

---

[11]     The VE testified the DOT was last updated in 1991.  Tr. at 577.  The VE stated the DOT lists the fingering demand for telephone solicitor as frequent, but based on his experience, the current fingering demand for telephone solicitor is occasional because the job is more automated and does not require an individual to dial a telephone as often.  See Tr. at 569, 576-77.

do not require constant handling and fingering with the hands.  Thus, the jobs identified by the VE do not require Plaintiff to repetitively use her hands.

### C.    Consideration of Plaintiff's Depression

Plaintiff argues that "[t]he ALJ was . . . required to revisit [Plaintiff]'s depression and to provide reasons for the implicit rejection of the evidence documenting that [Plaintiff] has some limitations from her depression."  Pl.'s Br. at 21.  Plaintiff states that the Court, "in remanding the case, specifically cited depression as one of [Plaintiff]'s severe impairments." Id.  Plaintiff further states that "[i]n any event . . . as set forth in the notices sent in advance of the hearing, the ALJ was free to revisit all issues."  Id.  Specifically, Plaintiff contends the ALJ was required to provide reasons for discounting the opinions of Dr. Brown and Dr. Steed.  See id. at 21-22.

As discussed above supra Part V.A.1 at 9-14, the sole issue on remand was to clarify the meaning of the term "repetitive" used by Mr. Hickey at the December 5, 2005 hearing, "as well [as] the potential conflict with the DOT. . . ."  Second Order at 2.  Although the Court mentioned Plaintiff's depression in the Second Order, see id. at 1 (stating "Plaintiff, who suffers from rheumatoid arthritis, lumbar degenerative disc disease, and depression"), the issue of Plaintiff's depression and the ALJ's treatment of Drs. Brown's and Steed's opinions were neither raised by Plaintiff in the Objections nor discussed by the Court in the Second Order.  See Objections at 1-5; Second Order 1-3.  In the Decision, the ALJ recognized the issue of Plaintiff's depression was not remanded by the Court:

> [Plaintiff]'s medically determined mental impairment of depression does not cause more than minimal limitation in . . . [Plaintiff]'s ability to perform basic mental work activities and is therefore nonsevere.  Since the . . . [Court] did not

> reverse the former [ALJ]'s decision regarding . . . [Plaintiff]'s alleged depression, the issue of this impairment is not before the undersigned.

Tr. at 398.   Thus, because Plaintiff's alleged mental impairment was considered at the December 5, 2005 hearing, and the District Judge did not remand the case for consideration of Plaintiff's depression or the articulation of reasons for discounting the opinions of Dr. Brown and Dr. Steed, the ALJ did not err.

### D.    Jobs Identified by the VE

Plaintiff argues that she cannot perform the jobs of appointment clerk, dispatcher, animal shelter clerk, order clerk, charge account clerk, and telephone solicitor because they all "entail frequent handling and/or fingering."   Pl.'s Br. at 22 (capitalization omitted). Moreover, Plaintiff asserts that Dr. Steed's opinion indicates Plaintiff's "affective disorder limits her to . . . simple, repetitive tasks" and precludes her from performing all jobs with a reasoning level of 3 or higher.   Id. at 23.   Plaintiff points out that all six jobs identified by the VE have a reasoning level of 3.   Id.   Further, Plaintiff contends she cannot perform the jobs of appointment clerk, dispatcher, animal shelter clerk, and telephone solicitor because they are semi-skilled jobs and Plaintiff has no past relevant work.   See id.   Thus, Plaintiff claims she cannot perform any of the jobs identified by the VE.   See id. at 25.

In the Decision, the ALJ determined that "[c]onsidering . . . [Plaintiff]'s age, education, work experience, and [RFC], there are jobs that exist in significant numbers in the national economy that . . . [Plaintiff] can perform . . . ."   Tr. at 400.   In addition to clarifying that Plaintiff is not precluded from performing the jobs identified by Mr. Hickey at the December 5, 2005 hearing (appointment clerk, dispatcher, animal shelter clerk, and order clerk), see

Tr. at 400-01, the ALJ stated the VE also found Plaintiff can perform the jobs of telephone solicitor and charge account clerk.  Tr. at 402.

Following the January 15, 2009 hearing, Plaintiff submitted a posthearing memorandum raising the same arguments with regard to the issue of jobs identified by the VE.  Compare Tr. at 400 with Pl.'s Br. at 22.  The ALJ addressed these arguments in the Decision:

> As part of the third argument, . . . [Plaintiff] asserted she could not perform the four semi-skilled jobs cited by the [VE] at the [December 5, 2005] hearing because she has no past relevant work, and semi-skilled jobs cannot be performed by an individual who is limited to simple, repetitive work, as found by the State agency psychological consultant.  The fallacy here is that even though the State agency psychological consultant expressed that opinion, the [ALJ] for the case did not attribute any weight to that opinion and did not make such a finding.
>
> Also in the third argument, . . . [Plaintiff] interwines frequent handling and/or fingering with repetitive.  At this point, the [ALJ] turns to the issue of "handling" versus "fingering" and, as well, the meaning of repetitive in a vocational sense.

Tr. at 400.

Substantial evidence supports the ALJ's findings with regard to jobs in the national economy that Plaintiff can perform.  At the December 5, 2005 hearing, Mr. Hickey determined Plaintiff cannot perform any of her past relevant work.  See Tr. at 378-80.  Mr. Hickey opined Plaintiff can perform the jobs of appointment clerk, dispatcher, animal shelter clerk, all semi-skilled jobs, and order clerk, an unskilled job.  See Tr. at 380-86.  The job of appointment clerk is a semi-skilled job, but Mr. Hickey testified a person with a high school diploma or GED can perform the level of skill associated with this job.  See Tr. at 382.

At the January 15, 2009 hearing, after clarifying the meaning of "repetitive" as it relates to the DOT, the VE confirmed Plaintiff can perform the jobs identified by Mr. Hickey. Tr. at 564-67.  In addition, the VE provided two additional jobs that Plaintiff can perform. See Tr. at 568-70.  Having been informed that transferability of job skills was not relevant because Plaintiff cannot return to her past relevant work, Tr. at 568, the VE opined Plaintiff can perform the jobs of telephone solicitor, a semi-skilled job, and charge account clerk, an unskilled job, Tr. at 569-70.

Addressing Plaintiff's assertion regarding "frequent handling and/or fingering," as discussed supra Part V.A.1 at 9-14, the sole issue on remand was to clarify the meaning of the term "repetitive" used by Mr. Hickey at the December 5, 2005 hearing, "as well [as] the potential conflict with the DOT. . . ."  Second Order at 2.  As determined supra Part V.B at 20-27, the ALJ at the January 15, 2009 hearing resolved this issue by concluding "repetitive" translates to "constant" in the DOT.  Thus, based on the limitation of "no repetitive use of the hands or forceful use of the hands such as squeezing with the hands," Tr. at 563, the VE testified the jobs identified by Mr. Hickey do not require constant handling and fingering. See Tr. at 572-80.  The VE confirmed that the four jobs do not require squeezing of the hands.  See Tr. at 564.  In addition, the two additional jobs identified by the VE at the January 15, 2009 hearing do not require constant handling and fingering. See Tr. at 572-80. Because "repetitive" does not equate to "frequent," the ALJ did not err in this regard.

With respect to Plaintiff's contention regarding her affective disorder, as discussed supra Part V.C at 27-28, the case was not remanded for the ALJ to address Dr. Steed's opinion that Plaintiff's "psychological symptoms are not of disabling proportion. [Plaintiff]

should be able to do s/r/r tasks." Tr. at 223. No limitations from Plaintiff's alleged mental condition were incorporated into Plaintiff's RFC prior to remand, and the ALJ was not required to address Dr. Steed's opinion regarding such limitations in the Decision. The ALJ did not err in finding Plaintiff is capable of performing jobs with a reasoning level of three.

The Court next addresses Plaintiff's claim that she cannot perform semi-skilled jobs because she "has no past relevant work." Pl.'s Br. at 23. The Regulations set forth criteria for determining whether work exists in the national economy:

> Work exists in the national economy when there is a significant number of jobs (in <u>one or more</u> occupations) having requirements which [a claimant] [is] able to meet with [his or her] physical or mental abilities and vocational qualifications. Isolated jobs that exist only in very limited numbers in relatively few locations outside the region where [the claimant] live[s] are not considered "work which exists in the national economy."

20 C.F.R. § 404.1566 (emphasis added).

Here, although Plaintiff is correct that the ALJ found she cannot perform past relevant work, <u>see</u> Tr. at 563, 569, the ALJ determined Plaintiff can perform jobs which exist in significant numbers in the national economy, <u>see</u> Tr. at 400. Two unskilled jobs were identified that Plaintiff can perform: (1) order clerk, "national approximately 145,000, Florida approximately 8,800," Tr. at 564; and (2) charge account clerk, "40,227 nationally and 2,454 within the State of Florida," Tr. at 570. Thus, in compliance with the Regulations, the ALJ found significant numbers of jobs exist in the national economy that Plaintiff can perform.

### E.    Amendment of Plaintiff's Alleged Onset Date of Disability

Plaintiff asserts "[t]he record reflects that [Plaintiff] initially alleged that she was disabled commencing on July 31, 1997, which was the month she learned that she had rheumatoid arthritis." Pl.'s Br. at 15. Plaintiff claims her initial alleged disability date

establishes she is entitled to disability insurance benefits.  See id.  Plaintiff states the ALJ denied her request to amend her alleged onset date of disability from October 31, 2001 back to July 31, 1997.  See id.  Plaintiff argues that "[t]he ALJ committed reversible error in denying this request."  Id.

At the first hearing before the ALJ, Plaintiff amended her alleged onset date of disability to October 31, 2001.  See Tr. at 22.  Plaintiff acknowledged that by amending her alleged onset date to October 31, 2001, she effectively waived her application for disability insurance benefits.  See Tr. at 22-23.  Although at the January 15, 2009 hearing the second ALJ did deny Plaintiff's request to amend her alleged onset date of disability back to July 31, 1997, see Tr. at 395, it appears the third ALJ nevertheless considered whether Plaintiff was disabled as of her original alleged onset date of disability.  In the Decision, the third ALJ stated Plaintiff "has not been under a disability . . . from July 31, 1997 through the date of this [D]ecision."  Tr. at 402 (emphasis added).  Even if Plaintiff's request to amend her alleged onset date had been granted, the result would have still been the same because the ALJ considered Plaintiff's disability as of the original alleged onset date, July 31, 1997, and found Plaintiff "not disabled" as of that date.  See Tr. at 402.  Accordingly, there was no error in this regard.

## VI.  Conclusion

After a thorough review of the entire record and consideration of the parties' respective memoranda, the undersigned finds the ALJ's Decision is supported by substantial evidence of record.  The ALJ complied with the Second Order by addressing the one issue identified by the District Judge and by resolving the ambiguity of the VE's testimony

regarding the meaning of the term "repetitive" as it relates to Plaintiff's ability to perform jobs identified by the VE. The VE testified that "repetitive" equals "constant" in the DOT, and none of the jobs identified by the VE require "constant" use of Plaintiff's hands. Additionally, the ALJ was not required to address Plaintiff's depression on remand or provide reasons for rejecting the opinions of Drs. Brown and Steed. Further, the ALJ identified jobs that exist in significant numbers in the national economy that Plaintiff can perform. Finally, there was no error in the denial of Plaintiff's request to amend her alleged onset date.

In accordance with the foregoing, it is

**ORDERED:**

1.      The Clerk of Court is directed to enter judgment pursuant to sentence four of 42 U.S.C. § 405(g), as incorporated by section 1383(c)(3), **AFFIRMING** the Commissioner's final decision.

2.      The Clerk of Court is directed to close the file.

**DONE AND ORDERED** at Jacksonville, Florida on March 31, 2011.

*James R. Klindt*

JAMES R. KLINDT
United States Magistrate Judge

wlg

Copies to:

Counsel of Record